# Richmond

## DANIEL McDORMAN v. W. FRANK SMYTH, JR., SUPERIN-TENDENT OF VIRGINIA STATE PENITENTIARY.

November 22, 1948.

Record No. 3380.

Present, All the Justices.

*W. A. Hall, Jr.,* for the petitioner.

*J. Lindsay Almond, Jr., Attorney General,* and *Ballard Baker, Special Assistant to the Attorney General,* for the respondent.

SPRATLEY, J., delivered the opinion of the court.

This proceeding, brought to obtain the release of the petitioner from the custody of the Superintendent of the Virginia State Penitentiary, is a sequel to the case of *McDorman* v. *Smyth,* 187 Va. 522, 47 S. E. (2d) 441. The record in that case, by agreement of the parties, has been adopted as the record in this proceeding.

The record discloses that the petitioner has been convicted six times in the courts of this State, as follows:

"(1) On November 10, 1926, in the Circuit Court of Rockingham county for housebreaking and given one year in the penitentiary.

"(2) On April 29, 1929, in the Circuit Court of Rockingham county for housebreaking and sentenced to one year in the penitentiary.

"(3) On June 7, 1929, in the Circuit Court of the city of Richmond on an information charging two prior felony convictions, and a sentence of one year imposed. Virginia Code, 1942 (Michie), section 5054.

"(4) On January 18, 1932, in the Circuit Court of Rockingham county for housebreaking and sentenced to three years imprisonment.

"(5) On March 9, 1932, in the Circuit Court of the City of Richmond on an information charging three prior felony convictions and given a sentence of ten years imprisonment.

"(6) On March 12, 1947, in the Circuit Court of the city of Richmond for escape from the State Penitentiary and sentenced to one year."

At the date of the decision in the former case, the petitioner had served in full the sentences for the first three convictions. However, he attacked the validity of all of the above convictions and sentences except the third. The attack on his first and second convictions and, in part, on his fourth conviction, was made for the purpose of establishing the invalidity of his fifth conviction as a prior offender. His sixth conviction was claimed to be void on the ground that the escape was from custody void at law at the time of the escape.

In that case, we sustained the validity of his conviction of January, 1932, his fourth conviction, and held that since his detention was lawful under the sentence then imposed, there was no occasion for us to inquire into the validity of his subsequent convictions, since he had not then begun the service of the sentences thereunder.

The petitioner completed the service of his fourth sentence on May 24, 1948. He has since been held in custody under the sentences imposed on his fifth and sixth convictions.

In this proceeding he attacks the legality of his detention under the sentence imposed on him on March 9, 1932, in the Circuit Court of the city of Richmond, on an information charging three prior felony convictions. Virginia Code, 1942 (Michie), section 5054. He contends that

sentence was invalid because the sentences imposed on his first and second convictions were invalid and void, the invalidity of either of them being sufficient to nullify his fifth conviction as a third offender.

He also contends that the sentence of March 9, 1932, was void because he was not assigned counsel at the trial, and did not waive the assistance of counsel.

The Commonwealth concedes that if either of the first two housebreaking convictions is void, then the conviction in 1932, as a third offender, is also void. It maintains, however, that the sentence upon the sixth conviction remains to be served because the petitioner escaped from the valid sentence of January 18, 1932.

We will first consider the questions raised as to the validity of the sentence imposed upon the first conviction, November 10, 1926.

In October, 1926, an indictment was returned in the Circuit Court of Rockingham county, which charged that "Daniel McDorman and Melvin Gray, on or about the 15th day of July, 1926, in the said county, a certain railroad box car, feloniously did break and enter, with intent the goods and chattels of the Merchants Grocery and Hardware Company, in said box car then and there being, feloniously to steal, take and carry away, and cigarettes, of the value of sixty-four dollars, of the goods and chattels of the. said Merchants Grocery Company, in the said box car then and there being found, feloniously did steal, take and carry away, * * *."

Upon this indictment the petitioner was tried on November 10, 1926, and judgment was entered against him in the following language:

"This day came the attorney for the Commonwealth and the accused, Daniel McDorman and Melvin Gray, came into court in the custody of the sheriff of this county, and thereupon the said Daniel McDorman and Melvin Gray each in person withdrew his plea of not guilty entered at a former day of the term and pleaded guilty to the indictment, and the Court, with the consent of the attorney for

the Commonwealth, proceeded to hear and determine the case without the intervention of a jury, and having heard the evidence, doth fix their punishment at one year in the State Penitentiary, and it being inquired of the said prisoners if they had or knew of anything to say why the court should not pronounce sentence on them as aforesaid and nothing being offered or alleged in delay thereof, it is considered by the Court that the Commonwealth recover against the said Daniel McDorman and Melvin Gray the costs incident to this prosecution and that the said Daniel McDorman and Melvin Gray be confined in the penitentiary of this State at hard labor for the term of one year less 39 days, the time said McDorman and Gray have been held in jail awaiting trial, and thereupon the said prisoners were remanded to jail until they can be delivered into the custody of an officer of the State Penitentiary, to be removed to the public jail and penitentiary house of this Commonwealth there to be held for the terms aforesaid."

The petitioner attacks the entire proceeding upon that trial as lacking due process of law on the grounds: First, that the indictment did not charge a crime, in that it failed to allege the ownership of the "certain railroad box car," charged to have been broken and entered; second, that it did not allege the ownership of the cigarettes alleged to have been stolen since the names of the individuals trading as the "Merchants Grocery and Hardware Company," were not stated; third, because the petitioner, an illiterate and ignorant youth under eighteen years of age when the alleged offense was committed, was tried without counsel or tender of counsel, and was coerced into confessing his guilt of the charge of which he was innocent; and, fourth, that being under eighteen years of age at the time of the commission of the alleged offense, he could not have been lawfully given a sentence to the penitentiary by virtue of Virginia Code, 1942 (Michie), section 1910.

The Commonwealth has been unable to prove in detail what took place at the trial more than twenty-two years

ago. We have only the evidence of the petitioner as to the circumstances and incidents of that trial.

Petitioner testified that he was born August 10, 1908; that he had gone as far in school as the second grade; that when he was arrested he was confined in jail, being unable to secure bail because of the poverty of himself and family; that he first pleaded not guilty; that before he was tried he had a conference with the trial judge, and that he then pleaded guilty because he was scared by a policeman and the "district attorney," who told him that he would be given a longer sentence if he did not; that the judge gave him no advice; that no witnesses testified in the case; and that he was innocent of the crime charged against him. He stated that his family did not communicate with him in jail, and his father had no funds and was living on charity. He said that he became implicated with some other boys in the offense charged because he smoked some of the stolen cigarettes which the other boys had brought to his father's home and hid in his father's barn; that he ignorantly pleaded guilty because of the further fear that his father might get into trouble; that he had never been in trouble before; and that he was ignorant of his right to consult a lawyer or to have a lawyer assigned to defend him, and no one informed him of his right to assistance of counsel. The record of his admission to the penitentiary gave the date of his birth as August 10, 1908.

In recent years a great multitude of *habeas corpus* proceedings have been instituted bring up the question whether, under various circumstances, lack of assistance of counsel in criminal cases amounts to a failure of due process of law, within the meaning of the "due process" clause of the Fourteenth Amendment to the United States Constitution, considered in connection with the right to "assistance of counsel" guaranteed under the Sixth Amendment.

In *Stonebreaker* v. *Smyth*, 187 Va. 250, 46 S. E. (2d) 406, Chief Justice Hudgins reviewed and analyzed many of the cases dealing with the above subject, especially with

reference to the right of an accused to have the assistance of counsel in capital cases.

In that case, Stonebreaker, the petitioner, was held under sentences made on a plea of guilty to four separate indictments charging armed robbery. Twenty years of age, ignorant and unfamiliar with court procedure, and uninformed as to his right to counsel, he was tried without the assistance of counsel. In holding his sentences void, we held that while the Constitution and the statutes of Virginia do not expressly require the appointment of counsel for an accused, Virginia Code, 1942 (Michie), sections 3518 and 4776, it is our duty to secure to him "the rights guaranteed under the broadened concept of the 'due process' clause of the Fourteenth Amendment to the Federal Constitution as expressed in recent decisions of the Supreme Court of the United States," if the allegations and proof bring him within their influence.

Subsequent to our decision in the above case, the opinion in *Bute* v. *Illinois*, 333 U. S. 640, 68 S. Ct. 763, 92 L. Ed. 735, was handed down. In that case, the petitioner, fifty-seven years of age, had pleaded guilty in the trial court to two indictments for noncapital offenses, in which the charges were stated in simple language. The record was silent as to appointment of counsel to assist him. Before he pleaded guilty, the court admonished and explained to him the penalties which would result from a plea of guilty. There was no claim that the defendant failed to understand the charges. By a majority of five to four, the court, on a petition seeking the release of the accused from dentention under the sentences imposed on him, because of the lack of assistance of counsel on his trial, held that, on the facts before it, there was nothing on which to base the claim that the petitioner was in such condition as not to know the character of the charges against him, and there was no good reason to doubt that there had been any failure of fair judicial process in the procedure followed by the trial court. Mr. Justice Burton, in an exhaustive discussion of the law and practice in the Federal and State courts with reference

to the right of an accused to have assistance of counsel, said:

"In a noncapital state felony case, this Court has recognized the constitutional right of the accused to the assistance of counsel for his defense when there are special circumstances showing that, otherwise, the defendant would not enjoy that fair notice and adequate hearing which constitute the foundation of due process of law in the trial of any criminal charge. *Rice* v. *Olson*, 324 U. S. 786, 65 S. Ct. 989, 89 L. Ed. 1367. * * * For discussions bearing on the absence of due process resulting from the inabilitiy of the defendant, intelligently and competently, either to plead guilty or to defend himself in certain noncapital cases see *Foster* v. *Illinois*, 332 U. S. 134, 137-138, 67 S. Ct. 1716, 91 L. Ed. 1955; *Canizio* v. *New York*, 327 U. S. 82, 84-85, 66 S. Ct. 452, 90 L. Ed. 545 (robbery in the first degree); *House* v. *Mayo*, 324 U. S. 42, 45-46, 65 S. Ct. 517, 89 L. Ed. 739 (burglary); *Smith* v. *O'Grady*, 312 U. S. 329, 332-334, 61 S. Ct. 572, 85 L. Ed. 859 (burglary); *Powell* v. *Alabama*, 287 U. S. 45, 70, 53 S. Ct. 55, 77 L. Ed. 158, 84 A. L. R. 527 (dictum as to deportation cases)."

In *Townsend* v. *Burke*, 334 U. S. 736, 68 S. Ct. 1252, 92 L. Ed. 1231, decided June 14, 1948, the petitioner, Townsend, was held in custody under two sentences, not exceeding ten to twenty years, imposed upon him on a plea of guilty to burglary and robbery. His petition for a writ of *habeas corpus*, alleged that when he was brought into court to plead he was not represented by counsel, offered assistance of counsel, advised of his right to counsel, or instructed with particularity as to the nature of the crimes with which he was charged. The court, holding that his constitutional rights had been violated, said that the uncounselled defendant was, under the circumstances shown by the record, disadvantaged by the lack of counsel, who, if present, would have been under the duty to prevent the court from proceeding on false assumptions.

Referring to *Bute* v. *Illinois, supra,* the court further said: "In that, and in earlier cases we have indicated, however,

that the disadvantage from absence of counsel, when aggravated by circumstances showing that it results in the prisoner actually being taken advantage of or prejudiced, does make out a case of violation of due process." (68 S. Ct. 1254).

To the same effect see *Von Moltke* v. *Gillies*, 332 U. S. 708, 68 S. Ct. 316, 92 L. Ed. 286, where the petitioner was ordered to be released from custody under a judgment, because it appeared she had not intelligently and understandingly waived her right to counsel upon her trial on an indictment charging her with conspiracy to violate the Federal Espionage Act of 1917.

The case of *Bute* v. *Illinois, supra,* is distinguishable on the facts, hereinafter stated, from the case at bar. The legal principles therein stated are applicable to the exceptional circumstances which appear in the present case.

Here, according to the record, the petitioner, an ignorant youth eighteen years old, was given no aid by the trial judge before his plea of guilty was accepted, nor was he advised as to the consequences of the plea. Unaided by counsel, he was faced by an indictment under which, dependent upon the evidence, he might have been convicted of breaking and entering a railroad box car with intent to steal, or of grand larceny, or of petit larceny, or of receiving stolen property with knowledge that it had been stolen. He was incapable of apprehending the range of statutory offenses included in the indictment, the range of allowable punishments thereunder, possible defenses to the charges, and circumstances in mitigation thereof, and of making a free and intelligent decision in respect to his plea. Nor was he capable of raising the question whether on account of his age, he was being tried by the proper court. There were legal problems as to which he needed aid. Had competent counsel been appointed to assist him, counsel would have been under duty to make a proper decision in accordance with the facts related by his client and the circumstances affecting his trial.

In this case, there is no contradiction of petitioner's

statement that he had no connection with the offense charged against him except the possession of some stolen cigarettes which had been brought to his father's home by other persons.

There is no denial of the statement of the petitioner that he withdrew his plea of not guilty after he had been threatened by two officers of the court. It appears that no witnesses for the State were cross-examined, and no one testified for the petitioner. He did not take the stand in his own behalf, nor was he advised that he might do so. At no time after his arrest did he have any one experienced in court procedure or in the ordinary affairs of life to advise him. Without the aid of counsel to guide him, he lost the advantage which might have attended his right to enter a different plea to the indictment and to present evidence as to his innocence.

On the record before us, the petitioner has sustained the burden of proof that for want of assistance of counsel "an ingredient of unfairness actively operated in the process that resulted in his confinement." The special circumstances recited disclosed that petitioner was not accorded the rights to which he was entitled under the "due process" clause of the Federal Constitution, as construed by the Supreme Court of the United States. For that reason, the sentence imposed upon him on November 10, 1926, was void. Consequently, the sentence imposed upon him in the Circuit Court of the city of Richmond on March 9, 1932, as a third offender was also void.

As to the right of an accused to assistance of counsel on trial on a charge as a second or subsequent offender, or habitual criminal, see *Gryger* v. *Burke*, 334 U. S. 728, 68 S. Ct. 1256, 92 L. Ed. 1226, decided June 14, 1948.

On December 28, 1932, petitioner while in custody on the sentence imposed on January 18, 1932, escaped from the State Penitentiary. Inasmuch as the latter sentence has been held valid in his former case, his escape was from lawful custody. Upon his recapture, he was indicted for the escape. On his trial on March 12, 1947, unaided by

counsel, he pleaded guilty. He was sentenced to confinement in the State penitentiary for "the term of one year to begin at the expiration of the present term" for which he was then held.

His guilt was not then denied and it is not now denied. No exceptional circumstances are claimed to show that want of assistance of counsel on his plea to the escape charge prejudiced his rights or operated as an ingredient of unfairness in the process of trial and judgment. No information helpful to the petitioner was unknown to the trial court. The minimum sentence for his offense was imposed. In view of these undisputed facts, it does not appear that counsel could have aided the petitioner.

We conclude that while petitioner is entitled to be released from custody under the sentence of March 9, 1932, he is not entitled to be released from detention until he has completed the sentence of one year imposed on him on March 12, 1947. However, on the last mentioned sentence, he should receive proper credit for the time he has served since May 24, 1948, the expiration of the valid sentence for which he had been held, and allowance for good conduct if, under pertinent rules and regulations of State authorities, he is entitled to such credit. It is so ordered.