Raymond L. WALLACE, Petitioner,

v.

Arthur L. McKENZIE, Warden, West Virginia State Penitentiary, sub nom. Bobby J. Leverette, Superintendent, Respondent.

Civ. A. No. 76–0203–H.

United States District Court,
S. D. West Virginia,
Huntington Division.

March 17, 1978.

rice G. Taylor, Jr., made pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), having reviewed the record in this proceeding, and having received no objections from either party, does hereby ORDER that, for the reasons set forth by the Magistrate in his opinion which is incorporated herein, that the Petitioner's conviction be, and the same is hereby, declared null and void, and that the writ of habeas corpus shall issue.

It is further ORDERED that the issuance of said writ of habeas corpus shall be stayed for a period of sixty days so that the State of West Virginia may, if it so chooses, exercise its right to re-try the Petitioner.

## PROPOSED FINDINGS AND RECOMMENDATIONS OF THE MAGISTRATE

"Petitioner, Raymond L. Wallace, a state prisoner presently serving a life sentence for first degree murder imposed by the then Common Pleas Court of Cabell County, is presently before the Court on his petition for writ of habeas corpus. Petitioner seeks relief under the provisions of .28 U.S.C. § 2241, et seq., alleging numerous irregularities in his trial which are claimed to be of constitutional magnitude. The respondent, though initially filing a motion to dismiss based, in part, upon a claimed failure to exhaust available state remedies, has now withdrawn that motion and in his answer filed July 21, 1977, states that petitioner has, in fact, exhausted available state remedies with respect to the issues raised in the petition.

As noted, numerous grounds are asserted by petitioner in this proceeding, however, counsel for petitioner and for respondent have submitted exhaustive briefs and, at least one of the grounds, presenting purely legal issues, can be resolved on the basis of the pleadings and exhibits, without requiring an evidentiary hearing. Accordingly, these findings and recommendations will be limited to the single issue considered dispositive insofar as petitioner's right to relief in this proceeding is concerned.[1]

James R. Bailes, Campbell, Woods, Bagley, Emerson, McNeer & Herndon, Huntington, W. Va., for petitioner.

Gregory W. Bailey, Asst. Atty. Gen., Charleston, W. Va., for respondent.

## ORDER

HADEN, District Judge.

This Court, having received and reviewed the Proposed Findings and Recommendations of the United States Magistrate, Mau-

---

1. Among the issues raised by petitioner there are some which also raise purely legal questions, however, several present factual issues which would require an evidentiary hearing to

The issue which is considered dispositive in this case arises as the result of an instruction given by the court to the jury which, it is claimed, unconstitutionally placed upon petitioner the burden of establishing his innocence of the charge of first degree murder.

## COURT'S INSTRUCTION ON FIRST DEGREE MURDER

On December 21, 1972, after trial by jury, petitioner was convicted of first degree murder. Thereafter, on October 26, 1973, petitioner was sentenced to the West Virginia State Penitentiary for life with, as a consequence of the jury's recommendation of mercy, eligibility for parole after serving ten years.

■ In its instructions to the jury, the court, at the behest of the prosecution and over the objections of petitioner's counsel, gave the following instruction:

'STATE'S INSTRUCTION NO. 3'

'The court instructs the jury that a person is presumed to intend that which he does or which is the immediate or necessary consequence of his act; and if the jury believes from all the evidence in this case beyond a reasonable doubt that the defendant, without any or upon very slight provocation, shot the deceased, Melvin Lucas, with a gun thereby giving him a mortal wound from which he died, he, the said Raymond Leonard Wallace is prima facie guilty of a willful, deliberate and premeditated killing, and the necessity rests upon him of showing extenuating circumstances and unless he proves such extenuating circumstances or the circumstances appear from the case made by the state, he is guilty of murder in the first degree.'

The objection at trial to this instruction was couched in very general terms, based upon a contention that 'this is not the law in the State of West Virginia, it is not the state law in the State of West Virginia.' Petitioner's present counsel now makes a very

specific objection. He asserts that the instruction, in contravention of the requirements of the Due Process Clause of the Fourteenth Amendment, relieves the state of its obligation of proving petitioner's guilt beyond reasonable doubt and shifts to the petitioner the burden of establishing his innocence of the charge of first degree murder.

Before considering the constitutional issue, it is appropriate to note that the instruction given by the court, though subject to some controversy, had from the earliest cases received approval when reviewed on appeal in the West Virginia Supreme Court. See, *State v. Welch*, 36 W.Va. 690, 15 S.E. 419, 422–23 (1892) and cases cited therein; *State v. Hedrick*, 99 W.Va. 529, 130 S.E. 295, 298 (1925); *State v. Dean*, 134 W.Va. 257, 58 S.E.2d 860, 867–68 (1950).

By its decision in *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970), however, the Supreme Court, in a case involving the issue of the standard of proof of guilt to be applied in juvenile proceedings, held 'that the Due Process Clause protects the accused against conviction except on proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.' In adopting 'proof beyond a reasonable doubt' as the measure or persuasion in both juvenile and adult criminal cases, the Court, quoting *Coffin v. United States*, 156 U.S. 432, 453, 15 S.Ct. 394, 403, 39 L.Ed. 481 (1895), was guided by the 'virtually unanimous adherence' to this standard in common law jurisdictions, as well as the fact that the standard provided substance 'for the presumption of innocence—that bedrock "axiomatic and elementary" principle whose "enforcement lies at the foundation of the administration of our criminal law." ' Finding the interests of liberty and freedom from the stigma of conviction to be of transcending value in a free society, the Court concluded that no man should lose his liberty until the government had borne the bur-

resolve. In view of the recommended decision in this case, it would seem inappropriate to require an evidentiary hearing, and, according-

ly, the issues, other than those here resolved, will not be considered.

den of proving every element of the offense with which he was charged beyond a reasonable doubt.

The ramifications of the Court's decision in *Winship* became clear in *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), a habeas proceeding which, like the present case, involved instructions by the court on the law to be applied with respect to a charge of murder. In the State of Maine unlawful and intentional killings were considered felonious homicides punished as murder unless committed in the heat of passion on sudden provocation. If the latter element was proven by the defendant, the crime of manslaughter was established. Upon determining that 'absence of heat of passion on sudden provocation constituted a material element of the crime of murder in Maine, the Court struck down, as failing to accord due process, instructions of the trial court which had informed the jury that, if an intentional and unlawful homicide was established by the prosecution, malice aforethought was to be conclusively implied unless the defendant proved by a fair preponderance of the evidence that he acted in the heat of passion on sudden provocation.'

The *Mullaney* decision, finding unconstitutional, on the basis of the principles set forth in *Winship*, instructions which remove from the prosecution the burden of proof of a material element of the crime charged and which, upon proof of stated facts raise a presumption of other facts which constitute material elements, clearly cast serious doubt on the validity of petitioner's conviction. The remaining issue, concerning the retroactivity of *Mullaney*, was resolved when the Court, in *Hankerson v. North Carolina*, 432 U.S. 233, 243, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977), recognizing that the major purpose of the reasonable doubt standard as applied in *Mullaney* was to 'overcome an aspect of the criminal trial that *substantially* impairs its truth-finding function and so raises *serious* questions about

the accuracy of guilty verdicts in past trials', held its decision in *Mullaney* to be completely retroactive. See, *V. v. City of New York*, 407 U.S. 203, 92 S.Ct. 1951, 32 L.Ed.2d 659 (1972).

The constitutional doctrine set forth in *Winship*, as applied in *Mullaney* and *Hankerson*, compel the conclusion that, as a result of STATE'S INSTRUCTION NO. 3 and the consequent shifting to the defendant of the burden of proof on the issues of premeditation, willfulness and deliberation, petitioner's conviction must be set aside.[2]

By statute and case law, the crime of murder in the first degree is distinguished from other types of felonious homicide by the presence of willfulness, deliberation and premeditation. The statute, W.Va. Code 61–2–1, provides that 'murder by poison . . . by any wilful, deliberate and premeditated killing . . . is murder of the first degree. All other murder is murder of the second degree.' See *State v. Stevenson*, 147 W.Va. 211, 127 S.E.2d 638, 641 (1962); *State v. Hertzog*, 55 W.Va. 74, 46 S.E. 792, 794–95 (1904). The Court, by its instruction, informed the jury not only that it could presume that defendant intended to kill the deceased but that it could further presume the presence of willfulness, deliberation and premeditation, if it found that the defendant shot and killed the deceased. By such instruction the court not only relieved the state of proving these elements of first degree murder but placed the burden of persuasion on the defendant to establish that his act was not willful, deliberate or premeditated and informed the jury that 'unless he proves such extenuating circumstances or the circumstances appear from the case made by the state, he is guilty of murder in the first degree.' The requirements of *Mullaney* were succinctly stated by the Court in *Patterson v. New York*, 432 U.S. 197, 215, 97 S.Ct. 2319, 2330, 53 L.Ed.2d 281 (1977), as follows: '*Mullaney* surely held that a state must

---

**2.** Indeed, the respondent has not argued in his briefs that STATE'S INSTRUCTION NO. 3 comports with the requirements of due process, but has chosen to rely on the failure to object to the instruction, arguing that petitioner is now precluded from raising that issue on writ of habeas corpus in the federal district court.

prove every ingredient of an offense beyond a reasonable doubt, and that it may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense. . . . Such shifting of the burden of persuasion with respect to a fact which the State deems so important that it must either be proved or presumed is impermissible under the Due Process Clause.' STATE'S INSTRUCTION NO. 3, in almost every regard, fails to comply with this holding of the Court.

Review of all the instructions given to the jury fails to reveal anything which would have relieved the defendant of the burden placed upon him by STATE'S INSTRUCTION NO. 3 or have dispelled the court's direction to the jury respecting the presumptions it was to apply in the case of a killing with a deadly weapon. While there were instructions with respect to the state's burden of proof, these instructions were general and, clearly, would not overcome the specific language of the offending instruction. Finally, given the specific language of STATE'S INSTRUCTION NO. 3, the general language of those instructions relating to the state's burden of proof, and the fact that at his trial petitioner did not deny that he had fired the fatal shot but attempted to excuse and to justify the shooting, it would not be possible to declare a belief that the constitutional error committed in this case 'was harmless beyond a reasonable doubt.' *Chapman v. State of Cal.*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

■ The respondent argues that, though constitutional error is established in the giving of the instruction, nevertheless, because trial counsel made only a general objection, petitioner is now precluded from raising the issue on writ of habeas corpus. Though it seems somewhat incongruous to require the defendant's trial counsel to anticipate constitutional doctrine first enunciated by the Court in 1975, support for respondent's posi-

tion is found in a footnote to the Court's opinion in *Hankerson v. North Carolina, supra,* 432 U.S. at p. 244, 97 S.Ct. at p. 2345, in which it is said that:

'If the validity of such burden-shifting presumptions were as well settled in the States that have them as respondent asserts, then it is unlikely that prior to *Mullaney* many defense lawyers made appropriate objections to jury instructions incorporating those presumptions. Petitioner made none here. The North Carolina Supreme Court passed on the validity of the instructions anyway. The States, if they wish, may be able to insulate past convictions by enforcing the normal and valid rule that failure to object to a jury instruction is a waiver of any claim of error. See, e. g., Fed.Rules Crim.Proc. 30.'

There are obvious inequities in applying a waiver rule to situations where the constitutional right has not yet been articulated by the Supreme Court, however, that Court has clearly evidenced its intent to defer in certain instances to state procedural rules which constitute an adequate and independent ground for decision, thereby precluding review of federal claims in habeas proceedings. See *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Accordingly, it must be determined whether, on the facts of this case, petitioner would be precluded, on review in the state court, from asserting constitutional error in the giving of STATE'S INSTRUCTION NO. 3.[3]

West Virginia has addressed the question of the effect to be given a failure to object to instructions in its Trial Court Rules for Trial Courts of Record, which provides as follows in Rule VI(c):

'In any case not governed by the West Virginia Rules of Civil Procedure for Trial Courts of Record, no party may assign as error the giving of or refusal to give an instruction unless he objects thereto before the arguments to the jury are

**3.** The federal standard, the 'cause' and 'prejudice' test would, under the facts of this case, clearly be satisfied. See *Francis v. Henderson,*

425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976); *Wainwright v. Sykes, supra.*

begun, stating distinctly as to any given instruction, the matter to which he objects and the grounds of his objection; but the trial court or any appellate court, may, in order to avoid manifest injustice or clear prejudice to a party, notice plain error in the giving of or refusal to give an instruction, whether or not it has been made the subject of objection. Opportunity shall be given to make objection to the giving of or the refusal to give an instruction out of the hearing of the jury.'

Both respondent and petitioner rely upon the case of *State v. Belcher*, 121 W.Va. 170, 2 S.E.2d 257, 260 (1939) as the leading West Virginia case on the effect of the failure to object to an instruction in a felony case when error is assigned to that instruction on appeal. It is apparent from the language of the Court in *Belcher* that considerable latitude is allowed where counsel has failed to object. Thus, in reversing a conviction on the basis of an erroneous instruction, though specific objection had not been made to the instruction at trial, the Court made the following, pertinent remarks:

'Remembering the difference that exists between the duties of a trial judge in a civil case and his duties in a criminal prosecution, we cannot help but be impressed with the convincing necessity of drawing a distinction between civil and felony cases in applying the rule in question. In a felony case, the trial judge should, if necessary, assume the initiative in order that the accused may receive a fair and impartial trial. *State v. Goins*, 120 W.Va. 605, 199 S.E. 873 (1938). In a civil proceeding, he is not required to do more than pass correctly upon the questions presented. Conforming this rule to the trial judge's well-understood duties, we are of the opinion that in a felony case the giving of an erroneous instruction prejudicial to the defendant may be

taken advantage of upon writ of error in this Court, even though there have been no specific objections in the nisi prius court.'

Any question with respect to the effect to be given petitioner's failure to object to STATE'S INSTRUCTION NO. 3 [4] has been resolved by the Court's decision in *Jones v. Warden, West Virginia Penitentiary*, —— W.Va. ——, 241 S.E.2d 914 (1978).[5] In the *Jones* case the trial court had given a deadly weapon instruction almost identical to that given in the present case and the petitioner, like the petitioner Wallace, had failed to make what was characterized as a 'Mullaney-based objection at trial.' The Court concluded, however, that 'safeguarding the integrity of the fact finding process must take priority over procedural concerns such as whether a trial lawyer could perceive future United States Supreme Court rulings and object to acts or instructions on the basis of constitutional infirmities yet unborn.' Accordingly, in light of the *Jones* decision, it is clear that there is no adequate and independent state procedural ground, arising as a consequence of a contemporaneous objection rule, which would bar review of the constitutional error resulting from the giving of STATE'S INSTRUCTION NO. 3 in petitioner's trial.

## RECOMMENDATION

In view of the fact that STATE'S INSTRUCTION NO. 3 clearly contravenes the requirements of the Due Process Clause and that this constitutional error is not barred from review by any state procedural rule, it is RESPECTFULLY RECOMMENDED that the Court declare petitioner's conviction null and void, staying the issuance of its writ for a period of sixty days so that the State of West Virginia may, if it so chooses, exercise its right to retry petitioner.

---

**4.** See *State v. Angel*, 154 W.Va. 615, 177 S.E.2d 562 (1970); *State v. Etchell*, 147 W.Va. 338, 127 S.E.2d 609 (1962).

**5.** The State has petitioned for a rehearing, however, that petition, a copy of which has been furnished by the Clerk, relates only to the question of retroactivity, which is not an issue in this case, and not to the question of a bar as a consequence of a contemporaneous objection rule.

Counsel for petitioner and respondent are hereby notified that a copy of these Proposed Findings and Recommendations will be submitted to a judge of this Court and that, in accordance with the provisions of 28 U.S.C. § 636(b)(1) and Rule 4(c) of the Magistrates Local Rules of Practice and Procedure, counsel will have ten (10) days within which to file written objections with the Clerk of this Court, identifying the portions of the Proposed Findings and Recommendations to which objection is made and the basis for such objection. Counsel shall serve on all parties copies of such objections, with copies of the same to the Honorable Charles H. Haden II, United States District Judge, and to this Magistrate."